IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


SHANNON B.,[1]                                    Case No. 6:21-cv-01144-HL

                    Plaintiff,                    **OPINION AND ORDER**

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.

_____

HALLMAN, United States Magistrate Judge:

        Plaintiff Shannon B. brings this action under the Social Security Act (the "Act"), 42

U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social

Security ("Commissioner"). The Commissioner denied plaintiff's application for Disability

Insurance Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

reasons, the decision of the Commissioner is REVERSED and this case is REMANDED for calculation and payment of benefits.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

# BACKGROUND

## I.    Plaintiff's Application

Plaintiff alleges disability based on chronic depression, lung problems, chronic

pneumonia, asthma, hypertension, type 2 diabetes, edema, fatty liver disease, sepsis, mersa,

irritable bowel syndrome, lactose intolerance, microcytic anemia, migraines, left foot surgery,

polycystic ovarian syndrome, vitamin B12 deficiency, obesity, post-traumatic stress disorder,

anxiety, and sleep apnea. Tr. 356.[2] At the time of her initially alleged onset date, she was 32

years old. Tr. 102. She has a bachelor's degree and past relevant work experience as a telephone

sales representative, dispatcher, cashier II, and daycare attendant. Tr. 17, 23.

Plaintiff protectively applied for DIB on May 30, 2017, alleging an onset date of January

1, 2007. Tr. 102. Her application was denied initially on June 26, 2017, and on reconsideration

on August 10, 2017. Tr. 110, 124-125. Plaintiff subsequently requested a hearing, which was

held on April 18, 2019, before Administrative Law Judge ("ALJ") Rudolph Murgo. Tr. 73.

Plaintiff appeared and testified at the hearing, represented by counsel; vocational expert ("VE")

Robert Simmons also testified. Tr. 73. ALJ Murgo held a supplemental hearing on August 1,

2019. Tr. 52. Plaintiff appeared represented again by counsel; VE Jason Purinton and medical

expert Dr. Howard Shapiro also testified. Tr. 52. On August 14, 2019, the ALJ issued a decision

denying plaintiff's claim. Tr. 139.

Plaintiff requested Appeals Council review, and on May 22, 2020 the case was remanded

to an ALJ for further vocational evidence. Tr. 147-148. ALJ Elizabeth Watson held another

hearing on November 3, 2020. Tr. 31. Plaintiff appeared represented again by counsel; VE

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 8).

Jennifer Bose also testified. Tr. 31. On December 17, 2020, the ALJ issued a decision denying

plaintiff's claim. Tr. 24. Plaintiff then sought review before this Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests on the claimant to establish disability. *Howard v.*

*Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person

is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b),

416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe

impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§

404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's]

physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c).

If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to

preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the

---

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 14).

claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after her alleged onset date[4] through the date of the ALJ's decision. Tr. 23.

At step two, the ALJ determined that plaintiff has the following severe impairments: "asthma/chronic obstructive pulmonary disease, smoking disorder, GERD, edema, sepsis, hypertension, obesity, diabetes mellitus II, left foot neuritis, affective disorder, anxiety disorder, and trauma/PTSD." Tr. 16.

---

[4] During the November 3, 2020 hearing, plaintiff amended her alleged onset date to July 1, 2016. Tr. 14.

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16-17. The ALJ then resolved that plaintiff had the residual function capacity ("RFC") to perform less than the full range of light work, with the following limitations:

> She can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand 2 hours out of an 8-hour day, walk 2 hours out of an 8-hour day, sit 6 hours out of an 8-hour day, can do no climbing of ropes/ladders/scaffolds, can frequently perform all other postural activities, should avoid moderate exposure to dust, odors, gases, and other pulmonary irritants, should avoid concentrated exposure to heights, hazards, and heavy equipment, should avoid exposure to extreme cold/heat, and is limited to simple, routine tasks not exceeding SVP of 2 and superficial public contact.

Tr. 17.

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 23

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as an order caller or office helper. Tr. 24. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 24.

## DISCUSSION

Plaintiff argues that the ALJ committed three errors: (1) failing to comply with the regulations in her assessment of the medical opinions and supporting her reasoning with substantial evidence; (2) failing to provide clear and convincing reasons to reject plaintiff's symptom testimony; and (3) failing to support the RFC with substantial evidence.

For the reasons discussed below, the Commissioner's decision denying plaintiff's claim is reversed and the case remanded for calculation and payment of benefits.

## I.    Medical Opinions

Plaintiff first asserts the ALJ improperly discredited the opinion of her primary care provider Dr. Leslie Ann Stevens Sorweide (as to plaintiff's physical conditions) and the opinion of her psychiatrist Dr. Brandon Yeager (as to plaintiff's mental conditions). Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§404.1520c(a)-(b); 416.920c(a)-(b).[5]

Under the revised regulations, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.* An ALJ is "not required to explain how they considered other secondary medical factors, unless they find that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical." *Id.* (*citing* 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3)). An ALJ's decision to discredit a medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

---

[5] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods*, 32 F.4th at 792. The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

A.    *Dr. Sorweide*

Dr. Sorweide provided a medical opinion about plaintiff's condition and ability to work based on her physical conditions.[6] Most significantly, she opined that plaintiff would need one 5-10-minute "mini-break" per hour, and that she would be absent more than two days per month. Tr. 2229. She could sit less than an hour and stand/walk less than two hours in an eight-hour workday, and would need to alternate sitting and walking. Tr. 2229-2230. Dr. Sorweide listed several diagnoses supporting these limitations, including obesity, edema, and asthma with "chronic obstruction, frequent flares/infection[, and] hospitalization." Tr. 2229. She also noted that plaintiff's exertional limitations relate to her lungs, and that she experiences knee pain and limited function due to her obesity. Tr. 2231. The ALJ found these opinions unpersuasive because they were (1) not supported by any findings to support the supposed limitations (2) inconsistent with the conclusions of the medical expert. Tr. 22.

First, the ALJ's conclusion as to the supportability of Dr. Sorweide's opinion ignores Dr. Sorweide's long history treating plaintiff and her extensive treatment records. As the Ninth Circuit has explained, an ALJ errs when they "fail[] to recognize that the opinions expressed in check-box form . . . [a]re based on significant experience . . . and supported by numerous records." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). As outlined above, Dr. Sorweide identified several diagnoses in her opinion that support the limitations she identifies. Those diagnoses are in turn supported by objective findings throughout Dr. Sorweide's treatment records relating to plaintiff. *See, e.g.*, Tr. 1001-02, 1004-5, 1008, 1031, 1650, 1696, 1736, 2244-46, 2307, 2363-64, 2402 (noting obesity/objective BMI findings); 1010, 1021, 1029, 1031, 1649,

---

[6]Although Dr. Sorweide also provided an opinion as to plaintiff's mental health-related limitations, plaintiff does not contest the ALJ's discounting of Dr. Sorweide's opinion on that aspect. Pl.'s Opening Br. 12.

1696, 1889, 2273, 2303, 2326, 2337, 2402 (noting edema); 1004, 1010, 1029, 2273, 2303, 2326,

2337, 2364, 2381, 2402-04 (noting wheezing).[7]

As to the consistency factor, the regulations provide that "[t]he more consistent a medical

opinion . . . is with the evidence from other medical sources and nonmedical sources in the

claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. §§

404.1520c(c)(2), 416.920c(c)(2). The Ninth Circuit has explained that "[e]ven under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32

F.th at 792. The new regulations do not upend the Ninth Circuit's entire body of caselaw relating

to medical evidence, which remain binding on this Court. *See Timothy P. v. Comm'r, Soc. Sec.

Admin.*, No. 6:20-CV-02060-MK, 2022 WL 2116099, at *9 (D. Or. June 13, 2022).

It remains true that an ALJ may not dismiss a medical opinion without providing a

thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or
> are contrary to the preponderant conclusions mandated by the objective findings
> does not achieve the level of specificity our prior cases have required, even when
> the objective factors are listed seriatim. The ALJ must do more than offer his own
> conclusions. He must set forth his own interpretations and explain why they,
> rather than the doctors', are correct.

---

[7] Defendant cites several instances throughout the record which note no edema or "stable"
edema. Def.'s Resp. Br. 7. But the presence of conflicting objective findings was not among the
reasons identified by the ALJ for rejecting Dr. Sorweide's opinion. Rather, the ALJ concluded
that Dr. Sorweide provided "no findings" to support her conclusions as to plaintiff's limitations.
Tr. 22. But even if the Court did consider defendant's post-hoc rationalization that Dr. Sorweide
also sometimes noted improvement in edema or asthma, such isolated instances do not
undermine Dr. Sorweide's opinion. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir.
2001) (ALJ erred in rejecting medical opinion based on selective indications of improvement
where the record as a whole reflected "continued, severe impairment").

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted). While an ALJ need no longer make specific findings as to the relationship and other factors, they must still explain how they considered the supportability and consistency factors. *See Woods*, 32 F.4th at 792.

In other words, while the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

Here, the ALJ stated that Dr. Sorweide's opinion was inconsistent with Dr. Shapiro's but provided none of the required explanation. It is unclear whether the ALJ considered the consistency of Dr. Sorweide's opinion with any objective evidence, or simply concluded that it was inconsistent with Dr. Shapiro's ultimate opinion as to plaintiff's limitations. If the latter could serve as a basis to reject a medical source's opinion, all an ALJ need say in order to disregard one opinion over another is that the two opinions are inconsistent. That is not the case. *See Massey v. Kijakazi*, No. 21-35986, 2022 WL 16916366, *1 (9th Cir. Nov. 14, 2022) ("[a]n ALJ errs when [they] reject[] a medical opinion or assign[] it little weight while doing nothing more than ignoring, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for

[their] conclusion") (quoting *Garrison*, 759 F.3d at 1012-13); *see also, e.g.*, *Deisenroth v. Berryhill*, No. 19-CV-00614-WHO, 2020 WL 1478326, *12 (N.D. Cal. Mar. 26, 2020) (ALJ "failed to engage with the evidence and opinions" of a treating source when the ALJ simply discounted the opinion based on the conclusory statement that the treating source's opinion was "not consistent" with other medical opinions). The ALJ therefore failed to engage in a meaningful evaluation of the consistency of Dr. Sorweide's opinion with any particular aspects of Dr. Shapiro's testimony, any other medical source's testimony, or with any other evidence in the record.[8] By failing to explain what evidence the ALJ found inconsistent with Dr. Sorweide's opinion, the ALJ did not comply with the regulations and this Court has no basis to conduct a meaningful review of whether her conclusion as to inconsistency was supported by substantial evidence. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (an ALJ's error is not harmless when it precludes the court from "conducting a meaningful review of the ALJ's reasoning"). Accordingly, the ALJ erred by failing to comply with the regulations and explain how she considered the consistency factor.

B.    *Dr. Yeager*

Dr. Brandon Yeager, plaintiff's treating psychiatrist, provided a medical opinion that, based on plaintiff's PTSD and depression symptoms, her "ability to perform successfully at any

---

[8] This is particularly problematic in this case, as Dr. Shapiro's opinion was based solely on his review of the medical records which—as plaintiff points out—Dr. Shapiro clearly lacked familiarity with at the time he gave his opinion. For example, he testified that plaintiff's asthma was unsupported by pulmonary function studies showing COPD, when in fact her medical record contains two such studies. Tr. 59-60; 1298-99; 1324-25. Likewise, he testified that plaintiff had "an episode" of edema, when in fact plaintiff's medical records are replete with observations of edema, which Dr. Sorweide noted as "chronic." *See, e.g.*, Tr. 59; 1010, 1021, 1028-29, 1031, 1649, 1696, 1889, 2273, 2303, 2326, 2337, 2402. Thus, even if the conclusory statement that "[t]he opinion is inconsistent with the testimony of the medical expert" was a sufficient explanation under the regulations, the ALJ's conclusion on this point is not supported by substantial evidence.

given job would be very low." Tr. 2223. He assessed moderately severe to severe impairments to all activities in all categories of mental activities. Tr. 2224-25. The ALJ found Dr. Yeager's opinion unpersuasive because (1) "no exam findings were provided to support the degree of limitations described," (2) it "appear[ed] to address the claimant's functioning during her psychiatric hospitalization, not during office visits," and (3) it was inconsistent with Dr. Sorweide's opinion. Tr. 21.

First, as with Dr. Sorweide's opinion, the ALJ's conclusion that Dr. Yeager's opinion was unsupported is itself not supported by substantial evidence. Dr. Yeager provided a narrative explanation of plaintiff's functioning, which specifically notes her diagnoses and describes how the symptoms related to those diagnoses result in functional limitations. Tr. 2223. Additionally, as with Dr. Sorweide, Dr. Yeager was a treating provider whose opinion is supported by a significant number of treatment records containing his observations of plaintiff. *See*, *e.g.*, Tr. 1176 (plaintiff "tense," "broken," "tearful and labile"); 1016 (plaintiff "constricted and dysphoric"); 1658 (plaintiff "anxious," and "downcast"); 1689 (plaintiff "tired" and "downcast"); 1798 (plaintiff "afraid," "tense," and "anxious"); 1808 (plaintiff "tense and tremulous," "tearful, labile, anxious and irritable"); 1880 (plaintiff "tense," "downcast and anxious"); 1924 (plaintiff "anxious and downcast").

Second, the ALJ's conclusion that Dr. Yeager's evaluation addressed only plaintiff's functioning during psychiatric hospitalization is likewise not supported by substantial evidence. As plaintiff notes in her opening brief, there is no indication that Dr. Yeager's opinion related only to her condition during psychiatric hospitalizations. Nowhere in Dr. Yeager's narrative or functional assessment did Dr. Yeager indicate the opinion related to plaintiff's functioning during hospitalizations as opposed to his long-term treatment of plaintiff during times she was

not hospitalized. Tr. 2223-26. Indeed, the functional assessment and narrative are dated March 2019, after both of plaintiff's hospitalizations. Tr. 2223-26; 1114-15 (plaintiff received inpatient care in March 2015 following low-lethal overdose); 1807 (plaintiff admitted to inpatient care in June 2018 for posttraumatic stress disorder). Dr. Yeager's opinions were written in 2019 and are in the present tense, implying they pertain to plaintiff's overall functioning related to her mental conditions, not just during her 2015 and 2018 hospitalizations.

Finally, the ALJ's discussion of the consistency factor is flawed here for the same reason as for the rejection of Dr. Sorweide's opinion on plaintiff's physical limitations: the ALJ provided no explanation supporting the conclusion that Dr. Yeager's opinion was "inconsistent."[9]

For those reasons, the ALJ's conclusion that Dr. Yeager's medical opinion was not persuasive is not supported by substantial evidence and fails to comply with the regulations governing the Commissioner's evaluation of medical opinions.[10]

## II.    Subjective Symptom Testimony

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of their symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591

---

[9] That is particularly puzzling here because the opinion the ALJ found Dr. Yeager's inconsistent with was Dr. Sorweide's, which the ALJ discounted as unpersuasive itself. Tr. 22. Thus, even if the conclusory statement that "[t]he opinion is not consistent with the opinion of Dr. Sorweide" was a sufficient explanation under the regulations, the ALJ's conclusion on this point is not supported by substantial evidence.

[10] Although plaintiff's briefing also addresses the ALJ's alleged error in finding the opinions of non-examining physicians Dr. Basham and Dr. Kehrli persuasive, the ALJ did not discount Dr. Sorweide or Dr. Yeager's opinions based on Dr. Basham or Dr. Kehrli's opinions. Because these opinions were not among the reasons given for the ALJ's rejection of evidence, the Court does not address plaintiff's arguments regarding their relative persuasiveness.

(9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan*, 246 F.3d at 1208. In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

A.   *Physical Impairments*

The ALJ provided distinct reasons for discrediting specific aspects of plaintiff's subjective symptom testimony as to her physical symptoms. The Court therefore addresses each aspect of plaintiff's discredited physical symptom testimony in turn.

1.      **Plaintiff's ability to walk**

First, the ALJ discounted plaintiff's testimony that she could walk only one-half of a block because it was "not consistent with the treatment record." Tr. 19. Specifically, she found that plaintiff's testimony conflicted with her reports throughout her treatment record that she went for regular walks. *Id*. Substantial evidence in the medical record supports the ALJ's conclusion on this point. The medical record contains multiple notations that plaintiff could walk or had been walking. *See*, *e.g.*, Tr. 2273 (plaintiff "tr[ies] to get a little bit of a walk in every day"); 2290 (plaintiff "goes on regular walks"); 2302 (plaintiff has been doing "more walking" and reported that "her ability to walk and get around has improved"); 2462 (plaintiff "has been walking and doing yoga").[11] It is a rational interpretation of that evidence that plaintiff is capable of walking a greater distance than a half of a block. The ALJ therefore provided a clear and convincing reason, supported by substantial evidence, for rejecting this testimony.

2.      **Plaintiff's testimony about swelling and the need to elevate her leg**

Plaintiff testified that she could sit in a chair for "less than an hour." Tr. 81. She attributed her inability to sit for long periods to her edema, testifying that she could not sit long "without [her] legs swelling up so bad that the pressure was painful." Tr. 38. She testified that same swelling and pain occurs with sitting, standing, and walking, and that she needs to put her legs up "several times" a day for "30 minutes/an hour" or "a couple of hours, an hour." Tr. 40, 84, 85. She testified that she must put her leg up during the day. Tr. 84. The ALJ discounted this

---

[11] There are some notations regarding difficulty walking. *See, e.g.*, Tr. 2257 (plaintiff reported "she is unable to walk around store or block"); 2355 (plaintiff "not able to walk without pain"). However, these two instances are, respectively, immediately following (1) a hospitalization for acute respiratory failure and (2) left foot neuritis later treated with injection. Tr. 2048, 2388.

testimony because (1) plaintiff failed to increase her Lasix dose as instructed, (2) it was inconsistent with the objective medical evidence.

First, a failure to obtain treatment or follow treatment advice, absent a good reason, can suffice as a clear and convincing rationale to discount testimony. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But here, the ALJ's reasoning is not supported by substantial evidence. Although the record does contain a note that plaintiff failed to increase her dose from 40mg Lasix to 80mg, Tr. 2290, a mere two weeks later she did so. Tr. 2302. There is nothing in the record to suggest that plaintiff's persistent problems with edema are a result of failure to seek treatment or follow treatment advice.

However, the ALJ's second reason—that plaintiff's testimony regarding her need to elevate her leg conflicts with the medical evidence—is supported by substantial evidence. Dr. Sorweide advised plaintiff to elevate her legs above her heart "two times a day for 20-30 minutes" and to "elevate legs when at rest." Tr. 2304, 2472. It is a rational interpretation of Dr. Sorweide's advice that plaintiff's legs need only be elevated twice per day, and that could be done outside plaintiff's work shift. Tr. 19. Dr. Sorweide did not provide a temporal frequency for rest or for elevating the leg, she provided only that plaintiff should elevate her legs "when at rest." Tr. 2472. The ALJ's rejection of plaintiff's testimony about her need to elevate her legs based on conflicting medical evidence is supported by substantial evidence.

### 3.    Plaintiff's daily activities

The ALJ noted that "the claimant's allegations concerning her daily activities are not fully consistent with the treatment record." Tr. 20. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work

if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

Here, the ALJ discounted plaintiff's testimony that her mother helps take care of her because she concluded that it was contradicted by evidence in the record that plaintiff spent six months in Nevada helping her mother in September 2019. Tr. 20. But the portion of the record to which the ALJ cites contains no details about what sort of help plaintiff provided to her mother from which the ALJ could have concluded that plaintiff's temporary care for her mother conflicts with her testimony that her mother takes care of her. The record lacks substantial evidence on this activity from which to draw a rational conclusion that it conflicts with plaintiff's testimony.

The ALJ also discounted plaintiff's testimony that "she does not do anything during the day" based on a reference in the medical record that plaintiff enjoys doing yard work. Tr. 20; 2298. As plaintiff notes, the ALJ mischaracterized plaintiff's testimony. Plaintiff did not testify that she does not do anything, but instead that she does not do "a whole lot." Tr. 82. Moreover, the record contains no evidence about how often plaintiff does yard work, or for how long. The ALJ's single citation to a cursory note that plaintiff "has been enjoying yard work" is not a clear and convincing reason supported by substantial evidence to disregard plaintiff's testimony that she does not do "a whole lot."

In sum, as to plaintiff's physical subjective symptom testimony, the ALJ provided clear and convincing reasons to reject plaintiff's testimony regarding her ability to walk and her need to elevate her legs above her heart during working hours. To the extent that the ALJ rejected any

other testimony about plaintiff's physical symptoms, the ALJ failed to provide any clear and convincing reasons for doing so.[12]

B.    *Mental Impairments*

As to plaintiff's mental health conditions, the ALJ provided two rationales for rejecting plaintiff's testimony about the severity of her conditions: (1) that plaintiff's symptoms are inconsistent with her treatment records, and (2) plaintiff's symptoms are inconsistent with her activities such as earning a bachelor's degree and assisting her mother. Tr. 20.

1.    **Inconsistency with treatment records**

The ALJ cites specific instances in the record which note improvement in 2017 and 2018. *See*, *e.g.*, Tr. 1700 (reporting plaintiff "doing better" in November 2017); 1787 (mood slightly improved in April 2018). But despite these single instances, plaintiff was hospitalized a few months later in June 2018 for mental health symptoms. Tr. 1807.

The ALJ also notes periods of improvement following this hospitalization. *See, e.g.*, Tr. 1996 (plaintiff "really good" in December 2018); 2330 (gardening and spending time outside was helping plaintiff's mood in July 2019); 2343 (plaintiff able to go to the beach and have a good time in August 2019). But there are many other notations in the treatment record from throughout the relevant period—including the observations of Dr. Yeager, already summarized earlier in this opinion—which corroborate plaintiff's testimony. *See, e.g.*, Tr. 1689 (plaintiff had "continued depression and irritability" and "significant trouble sleeping" in November 2017);

---

[12] The ALJ also raised issue with plaintiff's testimony that she could lift a gallon of milk, finding that "she reported neck and shoulder pain after doing much yardwork and heavy lifting, but there is no evidence of difficulties with lighter lifting." Tr. 19. However, plaintiff's testimony on this point said nothing about what she could *not* lift, only that she could lift a gallon of milk. Tr. 82. It is unclear what specific testimony the ALJ was rejecting here and therefore no analysis for the Court to conduct. Plaintiff's ability to lift does not appear to be in dispute.

1748 (plaintiff "worsening" in March 2018); 1803 (plaintiff "worsening significantly" in June

2018); 1897-98 (mental symptoms "continue to be challenging" and plaintiff "struggling

significantly" in July 2018, following inpatient discharge); 2251 (plaintiff reported feeling

depressed and having passive suicidal thoughts in February 2019); 2346 (plaintiff "struggling"

and experiencing suicidal thoughts in September 2019).

> As the Ninth Circuit has explained in the context of mental health issues:
>
> [I]t is error to reject a claimant's testimony merely because symptoms wax and
> wane in the course of treatment. Cycles of improvement and debilitating
> symptoms are a common occurrence, and in such circumstances, it is error for an
> ALJ to pick out a few isolated instances of improvement over a period of months
> or years and to treat them as a basis for concluding a claimant is capable of
> working.

*Garrison*, 759 F.3d at 1017 (internal citation omitted). An ALJ "may not cherry-pick

isolated instances of favorable psychological symptoms when the record as a whole reflects

longstanding psychological disability." *Richard R. v. Comm'r, Soc. Sec. Admin.*, 3:19-CV-00918-

MK, 2020 WL 4193114, at *4 (D. Or. July 21, 2020) (citing *Ghanim v. Colvin,* 763 F.3d 1154,

1164 (9th Cir. 2014)).

The ALJ's citations to single instances of improvement are not a clear and convincing

reason to reject her testimony. Viewed as a whole, the record indicates persistent and severe

psychological issues. Plaintiff was in fact hospitalized twice, and her depression described as

"severe" and "recurrent." Tr. 1807, 1114-15, 2223-26, 2458. In sum, the record lacks substantial

evidence to support the ALJ's finding that plaintiff's subjective symptom testimony is

contradicted by her medical records, which document a long history of mental health symptoms

which are not inconsistent with plaintiff's testimony.

2.        **Inconsistencies with activities**

The ALJ also discounted plaintiff's testimony on the severity of her mental conditions based on her ability to "study psychology and earn a bachelor's degree" and her ability to "assist her physically and mentally impaired mother." The ALJ's reasoning is not clear and convincing and is not supported by substantial evidence.

The ALJ's cursory mention of these activities failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). As this Court has repeatedly explained, "an ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Shirley C. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-cv-01212-MK, 2021 WL 3008265, at *6 (D. Or. July 15, 2021). In other words, other than generally identifying these two activities, the ALJ failed to explain how they undermined plaintiff's subjective symptom testimony. Therefore, this was not a clear and convincing reason to reject plaintiff's testimony. *See David H. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00571-MK, 2020 WL 1970811, at *4 (D. Or. Apr. 24, 2020) (rejecting ALJ's reliance on claimant's activities where "the ALJ did not explain how these minimal activities undermined [the claimant's] symptom testimony") (citation omitted).

The record also lacks substantial evidence from which the ALJ could have concluded these activities were inconsistent with plaintiff's testimony. Regarding plaintiff's degree, the ALJ cited a 2016 social history narrative that noted that plaintiff was "currently studying psychology and hopes to earn a bachelors degree" as well as her disability report which noted that she earned her degree in 2017. Tr. 990, 357. As plaintiff points out, however, there are no facts in the record about how long it took her to earn the degree, how many classes she took at

one time, whether she received any accommodations, or any other evidence from which to draw rational conclusions about whether the activity is inconsistent with her testimony.

The record likewise contains insufficient evidence to conclude that plaintiff's caring for her mother is inconsistent with her testimony. The only relevant record the ALJ cites states: "Mom's boyfriend died and so Mom moved in with them afterwards. Mom struggles medically and with MH issues. Spent 6 mon[ths] in Nevada helping her mom and now mother is living with her and her husband. Having some difficulties adjusting to this." Tr. 1654. There are no facts in the record related to what kind of care plaintiff gave to her mother and therefore no way to determine whether that care was inconsistent with plaintiff's symptom testimony.

Inconsistency with these two activities is therefore not a clear and convincing reason, supported by substantial evidence, for disregarding plaintiff's subjective symptom testimony pertaining to her mental health conditions.

## III.   RFC Determination

Finally, plaintiff asserts that the ALJ erred by failing to include all limitations supported by the record. The RFC must contemplate *all* medically determinable impairments, including those which the ALJ found non-severe, and evaluate all the relevant testimony, including the opinions of medical providers and the subjective symptom testimony set forth by the claimant. *Id.*; SSR 96–8p *available at* 1996 WL 374184. In formulating the RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only those limitations which are supported by substantial evidence must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here, plaintiff's arguments that the RFC failed to account for all her functional limitations are specifically tied to the ALJ's rejection of the contested medical and subjective symptom evidence. In finding that the ALJ improperly rejected that evidence, the Court necessarily finds that the ALJ failed to fashion an RFC that accurately reflects plaintiff's limitations.

**IV.    Remedy**

Plaintiff asserts that this case should be remanded for immediate payment of benefits under the credit-as-true standard.  Here, the Court notes that defendant has presented no substantive counterargument (other than why defendant believes there was no error to begin with) as to why the Court should not credit the discounted evidence as true and award plaintiff benefits. Applying the requisite standard, for the reasons set forth below, the Court finds that the credit-as-true standard is met.

A.    *Standard of review*

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits."  *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits.  *Treichler*, 775 F.3d at 1099-1100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

Generally, where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," the district court should remand for payment of benefits. *Garrison*, 759 F.3d at 1020.

In conducting this analysis, the district court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.*

Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.] *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (internal quotations and citation omitted).

B.      *Analysis.*

On the first prong, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler*, 775 F.3d at

1101 (internal quotations and citations omitted). Here, plaintiff has already attended and testified at three administrative hearings related to her application. Tr. 31, 52, 73. Three different vocational experts and a medical expert have testified. *Id*. Plaintiff's medical record is expansive, comprising over 2,400 pages of the record. Tr. 473-2933. Defendant has failed to "point[] to evidence in the record the ALJ overlooked," *Dominguez*, 808 F.3d at 407, and the Court finds none. The record is therefore fully developed and there is no need to resolve any conflict or ambiguity.[13]

The second prong is also satisfied because the ALJ committed harmful legal error. As discussed above, the ALJ erred by (1) improperly discrediting Dr. Sorweide's opinion as to plaintiff's physical impairments; (2) improperly discrediting Dr. Yeager's opinion as to plaintiff's mental impairments, and (3) failing to provide a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's symptom testimony related to her mental conditions.

As to the third prong, if the improperly discounted opinion evidence along with plaintiff's subjective symptom testimony regarding her mental condition were credited as true, the ALJ would have to find plaintiff disabled on remand. VE Bose testified that a hypothetical individual who was absent two or more days and off task more than 15% of the time would not be employable. Tr. 43-44. Based on the discounted evidence, plaintiff is such a hypothetical individual. Accordingly, the ALJ would be required to find her disabled on remand.

---

[13] Although the Court recognized above that the record is ambiguous as to any inconsistency between plaintiff's testimony about her mental symptoms and her ability to earn a degree and care for her mother, that issue related only plaintiff's subjective symptom testimony about her mental health. The ALJ did not offer those activities as reasons for discounting Dr. Yeager's opinion, or for discounting any aspect of her testimony about her physical condition. Thus, further development of these issues would serve no purpose given the other unrelated errors.

Considering the record as a whole, the Court finds no reason for serious doubt as to whether plaintiff is disabled. *Garrison*, 759 F.3d at 1020–21 (citations omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021).

Because plaintiff has satisfied the credit-as-true standard, and because the Court does not have serious doubt whether plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court the decision of the Commissioner is REVERSED and this case is REMANDED for calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 24th day of January, 2023.

_____
ANDREW HALLMAN
United States Magistrate Judge